UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL PETERSON, | NO. EDCV 08-1049-CT |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

For the reasons set forth below, it is ordered that judgment be entered in favor of defendant Commissioner of Social Security ("the Commissioner") because the Commissioner's decision is supported by substantial evidence and is free from material legal error.

SUMMARY OF PROCEEDINGS

On August 7, 2008, plaintiff, Carol Peterson ("plaintiff"), filed a complaint seeking judicial review of the denial of benefits by the Commissioner pursuant to the Social Security Act ("the Act"). Following the parties' consent to proceed before the magistrate judge, plaintiff filed a brief with points and authorities in support of remand or

reversal on November 5, 2008. On November 26, 2008, the Commissioner filed a brief.

## SUMMARY OF ADMINISTRATIVE RECORD

### 1. Proceedings

In 2005, plaintiff filed applications for benefits, alleging disability since August 14, 2002 due to posterior tibial tendonitis, mental depression and mood swings. (TR 87-89, 94-97, 102, 320-23).[1] The applications were denied initially and upon reconsideration. (TR 36-40, 43-49, 56-60).

On March 8, 2006, plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). (TR 61-62). On June 25, 2007, plaintiff, represented by an attorney, appeared and testified before an ALJ. (TR 332-57). The ALJ also considered vocational expert ("VE") testimony. On August 17, 2007, the ALJ issued a decision that plaintiff was not disabled, as defined by the Act, and thus was not eligible for benefits. (TR 18-25). On September 25, 2007, plaintiff filed a request with the Social Security Appeals Council to review the ALJ's decision. (TR 13-14). On April 15, 2008, the request was denied. (TR 7-9). Accordingly, the ALJ's decision stands as the final decision of the Commissioner. Plaintiff subsequently sought judicial review in this court.

### 2. Summary Of The Evidence

The ALJ's decision is attached as an exhibit to this opinion and order and materially summarizes the evidence in the case.

---

[1] "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

Case 5:08-cv-01049-CT    Document 20    Filed 12/08/08    Page 3 of 15    Page ID #:58

## PLAINTIFF'S CONTENTION

Plaintiff essentially contends the ALJ erred in evaluating Dr. David Bedrin's examining opinion.

## STANDARD OF REVIEW

Under 42 U.S.C. §405(g), this court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and, (2) the Commissioner used proper legal standards. Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971), but less than a preponderance. Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

When the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, however, the Court may not substitute its judgment for that of the Commissioner. Flaten v. Secretary of Health and Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995). The court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g).

## DISCUSSION

1. The Sequential Evaluation

A person is "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).
3

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled. First, it is determined whether the person is engaged in "substantial gainful activity." If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments. If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments." If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed impairment," it is determined whether the impairment prevents the person from performing past relevant work. If the person can perform past relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work. The person is entitled to benefits only if the person is unable to perform other work. 20 C.F.R. §§404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

2. Issue

Examining Physician

Plaintiff asserts that the ALJ failed to discuss Dr. David Bedrin's opinion in assessing plaintiff's residual functional capacity ("RFC"). At step two of the sequential evaluation, the ALJ concluded that plaintiff's left carpal tunnel syndrome, healed left tibial tendon tear,

4

moderate obesity, status post shingles, and depressive disorder, not otherwise specified, constitute severe impairments as that term is defined under the Act. (TR 20). Based on the evidence in the record, the ALJ determined that plaintiff retained the following RFC:

> [Plaintiff has the RFC to perform] medium work except no forceful gripping or grasping with the non-dominant hand, no exposure to hazards such as dangerous machinery, occasional contact with the public, but primarily work with things rather than people, and no production quotas such as piece work.

(Id. at 21).

Plaintiff contends that the ALJ's finding regarding plaintiff's RFC is flawed because it failed to account for the limitations set forth in Dr. Bedrin's psychiatric evaluation. In his evaluation, Dr. Bedrin, a consultative examining physician, noted that plaintiff exhibited some "looseness of associations," tangentiality of speech, labile effect, and frequent crying. (Id. at 185). Although Dr. Bedrin opined that none of these would impair plaintiff's memory or her ability to carry out complex job instructions, Dr. Bedrin nevertheless concluded that they would impair plaintiff's ability to relate to supervisors and the public. (Id. at 186).

As the ALJ explained, plaintiff's current applications were filed on July 29, 2005. (TR 18). He went on to explain that plaintiff filed prior applications for benefits on June 25, 2004. These applications were denied initially and upon reconsideration on October 26, 2004. Plaintiff did not appeal the reconsidered determinations and did not establish good cause to reopen or revise them. Thus, the controlling date in this case is October 27, 2004. According to the ALJ, any

reference to evidence relating to the period prior to October 27, 2004 is intended solely to provide a history of the pending claim and is not intended to reopen the final determination based on the prior applications either expressly or implicitly. (TR 18) (Citations and quotations omitted).

In general, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). As with a treating physician, the Commissioner must present "clear and convincing" reasons for rejecting the uncontroverted opinion of an examining physician and may reject the controverted opinion of an examining physician only for "specific and legitimate reasons that are supported by substantial evidence." Id. at 830-31. It is error for an ALJ to neither explicitly reject the opinion of an examining physician nor set forth specific, legitimate reasons for crediting a non-examining medical advisor over an examining physician. Nguyen v. Chater, 100 F.3d 1462 (9th Cir. 1996).

Here, even assuming Dr. Bedrin's August 4, 2004 opinion is relevant to the application at issue, which the court does not, the ALJ's ultimate finding regarding plaintiff's RFC is consistent with Dr. Bedrin's conclusions. Dr. Bedrin opined that plaintiff would be impaired in relating and interacting with the public and with supervisors. A fair reading of the ALJ's opinion shows that the ALJ's findings encompassed both of these limitations in articulating plaintiff's RFC. Specifically, the ALJ found that could have only "occasional contact with the public" and that plaintiff would have to "primarily work with things rather than people." (TR at 21). These

findings were consistent with the limitations set forth in Dr. Bedrin's opinion.

Moreover, the court notes that Dr. Bedrin further opined that demonstrated "no impairments in the ability to withstand the stress and pressures associated with an eight-hour workday and day-to-day work activities." (TR at 186). It is highly unlikely that this would not include some interaction with a supervisor.[2] And in any event, the ALJ limited plaintiff to working primarily with things, rather than people, which would in turn substantially limit plaintiff's interaction with anyone – including a supervisor. Although the ALJ did not specifically reference Dr. Bedrin's conclusions, the limitations that the ALJ placed on plaintiff's RFC comport with Dr. Bedrin's conclusions. Thus, the ALJ did not reject Dr. Bedrin's opinion.

Finally, the court notes that the record contains a second consultative examiner's evaluation that further supports the ALJ's findings. (TR at 256-61). Specifically, Dr. Kent Jordan opined on October 20, 2005, a date relevant to the applications at issue, that plaintiff could perform work consistently without special supervision and that plaintiff could accept instructions from supervisors. (TR at 260). Notably, Dr. Jordan's opinion post-dates Dr. Bedrin's opinion by over one year. Thus, while both are consistent with the ALJ's ultimate finding, Dr. Jordan's opinion is more representative of plaintiff's actual work-related abilities when the hearing before the ALJ occurred.

---

[2] Plaintiff testified that she currently does cooking and light housekeeping, including light dusting, laundry, and cleaning the bathrooms, for a disabled person. (TR at 345-49).

Given this record, the court finds that the ALJ did not commit material error in assessing Dr. Bedrin's opinion.

## CONCLUSION

After careful consideration of the record as a whole, the magistrate judge concludes that the Commissioner's decision is supported by substantial evidence and is free from material legal error. Accordingly, it is ordered that judgment be entered in favor of the Commissioner.

DATED: December 8, 2008

_____
CAROLYN TURCHIN
UNITED STATES MAGISTRATE JUDGE

## SOCIAL SECURITY ADMINISTRATION
### Office of Disability Adjudication and Review

### DECISION

| **IN THE CASE OF** | **CLAIM FOR** |
|---|---|
| | Period of Disability, Disability Insurance |
| Carol A. Petersen | Benefits, and Supplemental Security Income |
| (Claimant) | |
| | 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 |
| (Wage Earner) | (Social Security Number) |

### JURISDICTION AND PROCEDURAL HISTORY

On July 29, 2005, the claimant filed applications for a period of disability, disability insurance benefits, and supplemental security income, alleging disability beginning August 14, 2002. The claims were denied initially on November 4, 2005, and upon reconsideration on January 19, 2006. Thereafter, the claimant filed a timely written request for hearing on March 3, 2006 (20 CFR 404.929 *et seq.* and 416.1429 *et seq.*). The claimant appeared and testified at a hearing held on June 25, 2007, in Palm Springs, California. Abbe May, an impartial vocational expert, also appeared at the hearing. The claimant is represented by Attorney Linh L. Voung.

The claimant filed prior applications for a period of disability, disability insurance benefits, and supplemental security income on June 25, 2004. The claims were denied initially on August 24, 2004 and upon reconsideration on October 26, 2004. The claimant did not appeal the reconsidered determinations, and she has not established good cause to reopen or revise them. 20 CFR §§ 404.987-404.989 and 416.1487-416.1489. The controlling date in this case then is October 27, 2004. Any reference to evidence relating to the period prior to October 27, 2004 is intended solely to provide a history of the pending claim and is no intended to reopen the final determinations based on the prior applications either expressly or implicitly.

### ISSUES

The issue is whether the claimant is disabled under §§ 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. Disability is defined in the Act as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.

With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of §§ 216(i) and 223 of the Act are met. The claimant's earnings record shows she has acquired sufficient quarters of coverage to remain insured through June 30, 2007. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

See Next Page



After careful consideration of all the evidence, I conclude the claimant has not been under a disability within the meaning of the Act from October 27, 2004 through the date of this decision.

## APPLICABLE LAW

Under the authority of the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a) and 416.920(a)). The steps are followed in order. If I determine the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, I must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b) and 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975). If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, I must determine if the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c) and 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521 and 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, I must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, I must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, I must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).



Carol A. Petersen (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)             Page 3 of 8    20

Next, I must determine at step four whether the claimant has the residual functional capacity to perform the requirements of her past relevant work (20 CFR 404.1520(f) and 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965). If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), I must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience. If the claimant is able to do other work, she is not disabled. If the claimant is not able to do other work and meets the duration requirement, she is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g), 404.1560(c), 416.912(g) and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, I make the following findings:

1. **The claimant met the insured status requirements of the Social Security Act through June 30, 2007.**

2. **The claimant has not engaged in substantial gainful activity since the controlling date, October 24, 2004 (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).**

3. **The claimant has the following severe combination of impairments: left carpal tunnel syndrome, healed left tibial tendon tear, moderate obesity, status post shingles, and depressive disorder, not otherwise specified (20 CFR 404.1520(c) and 416.920(c)).**

The claimant's combination of medically determinable impairments causes more than slight limitation of her ability to perform basic work-related activities.

The claimant's medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere. In making this finding, I have considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in § 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.



See Next Page

Carol A. Petersen (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)                                                Page 4 of 8

21

The first functional area is activities of daily living, social functioning, and maintaining concentration, persistence or pace. In these areas, the claimant has mild limitation. The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation.

Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the first three functional areas and "no" limitation in the fourth area, it is nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in § 12.00 of the Listing of Impairments (SSR 96-8p). Accordingly, I have translated the above "B" criteria findings into work-related functions in the residual functional capacity assessment below.

**4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

The claimant has had no significant limitation of joint or spinal motion, no signs of joint inflammation, no gross sensory or motor deficits, and no abnormality of gait. She has been treated medically for complaints of depression and anxiety with no indication of any need for more aggressive treatment.

**5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work except no forceful gripping or grasping with the nondominant left hand, no exposure to hazards such a dangerous machinery, occasional contact with the public, but primarily work with things rather than people, and no production quotas such as piece work.**

In making this finding, I considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. I also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, I must follow a two step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairments, i.e., impairments that can be shown by medically acceptable clinical and laboratory diagnostic techniques, that could reasonably be expected to produce the pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity,

See Next Page


EXHIBIT

Carol A. Petersen (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)                                          Page 5 of 8

22

persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire case record.

Because a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that I must consider in addition to the objective medical evidence when assessing the credibility of the claimant's statements:

1. The claimant's daily activities;

2. The location, duration, frequency, and intensity of the claimant's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the claimant uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

The claimant initially stated that she could not stand very long because of tendonitis in her ankles, use her hands much because of arthritis in her hands, or read for prolonged periods of time because of shingles on her face. Ex. 9E at 2. In a later statement, she provided a detailed history of an old left tibial tendon injury and her problems in obtaining treatment for that injury as well as her recent problems with shingles on her face. Ex. 10E.

At the hearing, the claimant described how she had torn her left tibial tendon in August 2002 and had had it casted for two months. She indicated she had four years of problems with her ankles as well as shingles and left hand tendonitis, which she described as a carpal tunnel problem, but she said she had never worn a splint on her hand. She indicated she had been using hydrocodone for four years as well as gabapontin for shingles. As for her depression, she said that she had received no formal treatment.

After considering the evidence of record, I find the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

As of the controlling date, the claimant had a history of left ankle pain, but there was no indication of any restriction of joint motion, joint inflammation, or disturbance of gait. Ex. 8F at 2-4. In December 2004, she reported a problem with her face, but this went into remission by

See Next Page


EXHIBIT

Carol A. Petersen (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)                                          Page 6 of 8

23

May 2005 at which point there was a complaint of left hand problems which was initially diagnosed as tendonitis because physical examination findings, including carpal tunnel tests, were negative Ex, 11F at 9 and 4. X-rays of the left hand were normal in April 2006, right foot x-rays in June 2006 found only mild to moderate degenerative changes, and studies of the wrists in December 2006 were negative. Ex, 19F at 10-13. A treating orthopedic surgeon found only moderate complaints of right foot and left \hand pain in August 2006, no serious clinical findings were noted, and the doctor advised the claimant to return only if her symptoms worsened. Ex. 19F a 4. In all, the treating source reflected rather limited and desultory treatment and no need for more aggressive treatment

The claimant has been mildly to moderately obese. Given her weight and height at the time of the consultative medical evaluation in October 2005, she had a body mass index (BMI) of approximately 35.7. Ex. 12F at 2. The claimant's primary care treating source has prescribed psychotropic medication on the basis of her complaints of anxiety and depression with no indication of any need for more aggressive treatment, and the consultative psychiatric examiner noted that the claimant's professed problems with memory and concentration appeared quite embellished and inconsistent with her overall appearance and demeanor, which appeared to be within normal limits and led the examiner to conclude that the claimant had a personality disorder in addition to a depressive disorder and that the claimant was at most only mildly limited as reflected by the assessment of a global assessment of functioning score of 65. Ex. 13F.

As for the other opinion evidence, there are no treating source findings indicating the claimant is unable to work or limited in any specific manner. The consultative medical examiner, a Board eligible internist, emphasized that the physical examination findings were essentially normal , that there was no evidence supporting the history of hyperglycemia and myocardial infarction, and that the claimant physically could lift and carry fifty pounds occasionally and twenty-five pounds frequently with no other limitations. Ex. 12F.

While the medical evidence of record does document an old left tibial tendon injury and a left carpal tunnel problem, the clinical finings have been minimal since the controlling date and there has been no indication of any need for surgery or medical treatment other than medication. Her activities of daily life show her physical problem are normal in that she admitted that she walked a half hour at a time and, could perform light housework, shop, and cook on a regular independent basis. The consultative psychiatric examiner noted that the claimant is not motivated to seek and maintain employment, and it is reasonable to conclude that the embellishment that doctor found is also reflected in the discrepancy between her physical complaints and the minimal treatment her treating sources have provided. Accordingly, I find that the evidence of record best supports the findings of the consultative medical examiner and that the claimant's subjective complaints do not support a greater degree of limitation than that found herein above.

**6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

The claimant has past relevant work as a massage therapist. Such work requires a capacity for forceful gripping and grasping with both hands as well as more than occasional interaction with the public. Accordingly, the claimant is unable to perform past relevant work.



See Next Page

7. The claimant was born on November 16, 1949 and was fifty-four years old, which is defined as an individual closely approaching advanced age, on the controlling date, and she has been of advance age since she attained age fifty-five (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

In determining whether a successful adjustment to other work can be made, I must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has non-exertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14).

If the claimant had the residual functional capacity to perform the full range of medium work, Medical-Vocational Rules 203.22 and 203.15 would direct a finding of "not disabled." However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled medium occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as hand packer, kitchen helper, and officer worker and that there are over 30,000 such unskilled medium work jobs in the local regional economy and over 5,000,000 in the national economy.

Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.


EXHIBIT

See Next Page